**Jackie Louis CARTER, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**Nos. F–94–538 to F–94–541.**

Court of Criminal Appeals of Oklahoma.

July 30, 1996.

Osher Bachrach, Norman, Trial Counsel, for Appellant.

R. Richard Sitzman, Assistant District Attorney, Norman, Trial Counsel, for Appellee.

Sandra Mulhair Cinnamon, Appellate Defense Counsel, Norman, Appellate Counsel, for Appellant.

W.A. Drew Edmondson, Attorney General, Robert Whittaker, Assistant Attorney General, Oklahoma City, R. Richard Sitzman, Assistant District Attorney, Norman, Appellate Counsel, for Appellee.

## *OPINION*

LUMPKIN, Judge:

This case deals extensively with the Oklahoma Corrupt Organizations Prevention Act (hereinafter "Act", "RICO", or "racketeering charge"), codified at sections 1401 through 1419 of Title 22. It presents a first-impression question of venue which occurs when both predicate acts and substantive charges—some which occurred in other counties—are filed in one court proceeding.

### I.

Appellant Jackie Louis Carter was tried before a Cleveland County jury pursuant to the venue provisions of the Act and convicted as follows: in CF–93–410, he was convicted of Grand Larceny in the House in the Night Time (Garvin County) (21 O.S.1991, § 1707), and was sentenced to five (5) years. In CF–93–412, he was convicted of Second Degree Forgery (Cleveland County) (21 O.S.1991, § 1585(2)), and was sentenced to three (3) years. In CF–93–416, he was convicted of Obtaining Merchandise by False Pretenses (21 O.S.1991, § 1541.1), and was sentenced to

six (6) months in the county jail. In CF–93–417, he was convicted of Robbery by Force and Fear (Oklahoma County) (21 O.S.1991, § 791), and was sentenced to eight (8) years. The trial court ordered all sentences to be served consecutively. We affirm the conviction for forgery; for reasons given below, all other convictions must be reversed.

To fully understand this case, some background is necessary. Appellant was also charged with (and acquitted of) CF–93–352, criminal racketeering under the Act, stemming from gang activity alleged to have been a part of the other charged offenses; and CF–93–415, another count of grand larceny.[1] In an attempt to prove the criminal racketeering charge, the prosecution presented evidence of several other predicate crimes which occurred in three different counties (not separately charged). In all, there were over fifty witnesses for the prosecution, presented over a period of ten days of trial, comprising ten volumes of transcripts.[2] With that in mind, the following facts are limited to the crimes of which Appellant was convicted.

At approximately 6:30 p.m. on November 16, 1992, in Oklahoma County, 84–year–old William Clark ran his car off in a ditch along I–35 in south Oklahoma City. A Mr. Hickman came along, stopped and offered to go get help. As Hickman was pulling off, he saw another car pull up to the accident scene, two black males get out and approach Clark. The two men forced two rings off Clark's fingers which altogether contained approximately six carats in diamonds; then took his wallet containing approximately $400 and some credit cards, including a Dillard's card. The two men then left. This formed the basis for CF–93–417, robbery by force and fear.

That same evening at approximately 7:30 p.m., two black males entered the Dillard's store at Sooner Fashion Mall in Norman, Cleveland County, and picked out items of clothing to purchase. At the register, the purchaser, identified as Appellant, presented the clerk with William Clark's credit card and signed Clark's name to the charge slip. He and his companion then took the clothes and left. These actions formed the basis for CF–93–412, second degree forgery and CF–93–416, obtaining property by false pretense.

On November 28, 1992, in Pauls Valley, Garvin County, L.R. and Irene Hartley ran a laundromat in a building behind their house. That evening at 8:25 p.m., someone rang the front door bell. Mrs. Hartley answered the door to find a young black male standing there. As the youth continued asking questions, Mrs. Hartley formed the impression he was stalling, and she discontinued the conversation. After the youth had gone, Mrs. Hartley heard a noise in the back portion of her house. When she investigated, she found two black males in her bedroom, one of which was Appellant. Fearing for her safety, she ran out of the house. Outside, she discovered her husband, L.R., who had been inside the laundromat, had been robbed at the same time by an associate of Appellant's. When she returned, she discovered someone had taken her billfold and other items from her purse. She lost approximately $125. This formed the basis for CF–93–410, grand larceny from a house at night time.

## II.

For his first proposition, Appellant claims that by trying him in Cleveland County for

---

1. Also tried at the same time were Terry Banner and Eric Stevenson. All charges against Stevenson were dismissed when the court sustained a demurrer to the evidence at the close of the prosecution's case. Banner was convicted of some crimes as well; his appeal is not a part of this record.

2. Owing to the unique nature of the case before us, this Court directed oral argument be heard. Pursuant to a motion by Richard Sitzman, the assistant district attorney who prosecuted the case in the district court, this Court (over Appellant's late objection) gave him leave to participate in the oral argument. Such argument was held on February 6, 1996. Following oral argument, both sides were given an opportunity to file supplemental briefs. Appellant's brief was filed in a timely manner, and was considered by this Court. Appellee's supplemental brief was filed late, along with a motion by Mr. Sitzman for leave to file it out of time which was devoid of any good reason for the late filing. Accordingly, his motion for leave to file his brief out of time is DENIED, and his supplemental brief was not considered by this Court in reaching its decision.

crimes which occurred in Oklahoma and Garvin Counties, he was denied his rights under Article II, Section 20, of the Oklahoma Constitution, which guarantees trial in the county in which the crime occurred. He also claims this violated his right to Due Process under the Fourteenth Amendment to the United States Constitution.

### A.

■ In an attempt to prove racketeering activity, prosecutors presented evidence of predicate crimes in adjoining Garvin and Oklahoma counties in addition to predicate crimes in Cleveland County. Appellant did not object to the evidence to prove the racketeering charge; however, he did object to being tried in Cleveland County for the substantive crimes which occurred in the other two counties. The prosecution claimed venue was proper because the criminal racketeering charge was being tried in Cleveland County; therefore, the prosecution could use the racketeering statute to "bootstrap" the substantive crimes from the other counties into one trial. We agree.

### B.

Appellant cites Okla. Const. Art. II, § 20, which reads in pertinent part:

In all criminal prosecutions the accused shall have the right to a speedy and public trial by an impartial jury of the county in which the crime shall have been committed or, where uncertainty exists as to the county in which the crime was committed, the accused may be tried in any county in which the evidence indicates the crime might have been committed. Provided, that the venue may be changed to some other county of the state, on the application of the accused, in such manner as may be prescribed by law....

Appellant's argument cannot stand based solely on this provision. Despite this constitutional provision, this Court has upheld statutory enactments by the Legislature which would appear to enlarge the venue provisions enacted in this constitutional provision. *See* 22 O.S.1991, § 124 (venue may be in more than one county where parts of offense com-

mitted in more than one county); *State v. Bennett,* 81 Okl.Cr. 206, 214, 162 P.2d 581, 585 (1945); *Williams v. State,* 16 Okla.Cr. 217, 236–37, 182 P. 718, 724 (1919) (recognizing venue for conspiracy prosecution may be in more than one county). *See also* 22 O.S. 1991, § 123 (allowing for prosecution in county where defendant resides, even though defendant may have gone outside the state to commit the crime of dueling). With this in mind, we shall consider the venue provision of the racketeering act itself.

Venue under the Oklahoma Corrupt Organizations Prevention Act is set forth within the Act itself. It reads:

Venue for a civil or criminal action to enforce the provisions of the Oklahoma Corrupt Organizations Prevention Act shall be in any county in which at least one act of racketeering activity is alleged to have occurred in the petition or information or indictment, it being the intent of this act, that one district court have jurisdiction over all the conduct, persons and property subject to this act.

22 O.S.1991, § 1403(E). The State argued both at trial and on appeal that the key phrase here is the last portion of the sentence, "it being the intent of this act, that one district court have jurisdiction over all the conduct, persons and property subject to this act." The State argues the words "all the conduct" indicate an intention by the Legislature that one district court should have the venue to try all crimes, both predicate and substantive, in one proceeding, provided the racketeering charge itself has been properly pleaded and shown to exist.

Appellant replies the same "conduct" language is also contained in Section 1402 of the Act, which allows a predicate offense committed outside of Oklahoma to be used in support of a racketeering charge, arguing that under the logical extension of the State's interpretation of "conduct," an Oklahoma trial court would be allowed to try a person for a crime committed outside the state.

■ Appellant's argument misses the distinction between jurisdiction and venue. There is a difference between lack of jurisdiction, which would prevent a court in Okla-

homa to try someone for a crime committed outside the state; and venue, which determines which of many courts having jurisdiction is the proper forum for a trial. *See Smith v. State,* 554 P.2d 851, 854 (Okl.Cr. 1976). Therefore, his argument on this point is not persuasive.

The state RICO Act defines criminal racketeering by listing specific statutory offenses which can serve as foundational or predicate crimes for the racketeering offense. 22 O.S.Supp.1993, § 1402(10).[3] Clearly, these offenses constitute "conduct" which can both be a foundation for the RICO charge and be chargeable on their own merit. *See* 22 O.S. 1991, § 1408.[4]

Reading these sections in connection with 22 O.S.1991, § 1403(E), we think the language shows a Legislative intent that a single court possess a kind of "pendant venue" to try in one proceeding all crimes, both those which serve as predicate crimes for the RICO violation and those which have been charged separately as substantive crimes, even if those crimes occurred in other counties. We have been unable to find any other jurisdiction which has directly addressed this point. However, we can draw analogies from other jurisdictions to reach this conclusion. *See Beattie v. United States,* 756 F.2d 91, 103 (D.C.Cir.1984); *VMS/PCA Ltd. Partnership v. PCA Partners Ltd.,* 727 F.Supp. 1167, 1173–74 (N.D.Ill.1989) (under a pendant venue doctrine, federal courts may exercise discretion to hear claims where venue may otherwise be lacking if the claims arise out of a "common nucleus of operative facts" with claims as to which venue is proper; factors governing whether a court should hear a case include whether to do so furthers the goals of judicial economy, convenience and fairness to the litigants.); *see also American Trade Partners v. A–1 International Importing,*

755 F.Supp. 1292, 1304 (E.D.Pa.1990) (equating RICO venue with that of conspiracy theory).

In this case it was alleged at trial all crimes charged arose out of a common nucleus of operative facts: the prosecution alleged Appellant and others participated in an enterprise through a pattern of racketeering activity. It was alleged they were a group of persons who associated together as a street gang to commit felonies which in turn would benefit both themselves and the gang. *See* 22 O.S.1991, § 1402(2), (5), (10) and 22 O.S. 1991, § 1403.

To allow this kind of "pendant venue" furthers the limited resources of Oklahoma courts. We have, in the name of judicial economy, approved of provisions which allow for one court to conduct one trial to dispose of several issues. *See Chapple v. State,* 866 P.2d 1213, 1216 (Okl.Cr.1993); *Woodruff v. State,* 825 P.2d 273, 275 (Okl.Cr.1992); *Allen v. District Court of Washington County,* 803 P.2d 1164, 1170 (Okl.Cr.1990) (Lane, V.P.J., concurring in part and dissenting in part) (discovery proceedings); *Perez v. State,* 798 P.2d 639, 640 (Okl.Cr.1990); *Roth v. State,* 762 P.2d 279, 281 (Okl.Cr.1988); *McClellan v. State,* 757 P.2d 397, 398 (Okl.Cr.1988); *Vowell v. State,* 728 P.2d 854, 857 (Okl.Cr.1986); *C.R.B. v. State,* 638 P.2d 1130, 1132 (Okl.Cr. 1982) (juvenile proceedings); *Burks v. State,* 594 P.2d 771, 772 (Okl.Cr.1979) (appellate level); *Lamb v. State,* 560 P.2d 583, 588 (Okl.Cr.1977) (continuance during trial). The same is true here.

Concerning convenience: the substantive crimes here charged arose in Garvin, Cleveland and Oklahoma counties. The three counties are contiguous; indeed, the same district attorney serves both Garvin and Cleveland counties. Further, combining all

---

**3.** The introductory paragraph of subsection 10 of Section 1402 reads:

> "Racketeering activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any conduct which is chargeable or indictable as constituting a felony violation of one or more of the following provisions of the Oklahoma Statutes, regardless of whether such act is in fact charged or indicted: ....

**4.** That section reads:

> Criminal penalties and fines pursuant to the Oklahoma Corrupt Organizations Prevention Act are supplemental and not mutually exclusive, except when so designated, and shall not preclude the application of any other criminal or civil remedy pursuant to any other provision of the law.

activities in one trial made it much more convenient for witnesses, who would be spared the inconvenience of having to testify three different times in three different counties.

■ That leaves the third factor: fairness to the defendants. Appellant claims he was subjected to multiple prosecutions for the series of events in Garvin County. Although Appellant was tried in Cleveland County for Grand Larceny in the House in the Night Time in CF–93–410, he claims he was also charged in Garvin County for robbery and burglary in connection with the same series of incidents at the Hartley house and laundromat. Appellant has presented a sufficient record to support his claim he was both charged and convicted in Garvin County of robbery by force and fear and first degree burglary, each of which arose out of the same series of events as his grand larceny conviction in Cleveland County. *See Carter v. State*, F–94–552 (appealing Garvin County case nos. 92–346 and 92–347).[5]

Appellant did not raise a double jeopardy argument, and we need not address it on those grounds. Suffice it to say here that allowing multiple trials in more than one county on charges arising out of a singular series of events cannot be considered fair to a defendant. As our discussion above shows, allowing venue in the county in which the RICO acts are charged eliminates the possibility of multiple trials by allowing a single trial under one court. Allowing a single trial is fair to a defendant because he is not forced to defend himself in more than one forum on charges arising from one series of actions; this eliminates the inconvenience to a defen-

dant of incurring additional expenses accrued from multiple trials, and minimizes interference with a defendant's rehabilitation while he is in the custody of the Department of Corrections. Actions by prosecutors here undermine these arguments.[6]

Accordingly, because this third factor of fairness is not present here due to Appellant's prosecution in two separate counties for the same act, and under the facts and circumstances of this case this factor outweighs the other two, we find it necessary to reverse and remand Appellant's Cleveland County conviction for Grand Larceny in the House in the Night Time in CF–93–410, and order that charge dismissed.

### C.

In summary, so long as a racketeering charge is properly before the trial court, it would facilitate matters for both the prosecution and the defendant to conduct a single trial in which all matters can be adjudicated in a single forum. In this way, a defendant does not have the burden of facing several charges in several different courts.

■ We therefore interpret 22 O.S.1991, § 1403(E) as allowing a single court to try not only a criminal racketeering charge, but also any substantive charges which relate to the racketeering charge, so long as the racketeering charge is properly before the trial court and the substantive claims arise out of the same common nucleus of operative facts as the racketeering charge. If a court can determine such a proceeding furthers the goals of judicial economy, convenience and fairness to the litigants, as discussed above,

---

**5.** Mr. Hartley went to the laundromat to empty the coin machines. While he was out there, he was accosted by an associate of Appellant's who took not only the coins, but also Mr. Hartley's wallet. This gave rise to a Garvin County conviction of Robbery by Force and Fear in Case No. CF–92–346. The burglary charge stemmed from the entry of Appellant and another associate into the house while the youth distracted Mrs. Hartley at the front door. It was after this entry (which gave rise to a charge of first degree burglary, CF–92–347) that Appellant stole money from the house after Mrs. Hartley fled the house. Appellant was tried and convicted in the Garvin County case in October 1993, and was sentenced on those crimes on February 16, 1994. He was

tried in Cleveland County in November 1993, and was sentenced there on February 11, 1994.

**6.** We do not intend to hold by this discussion that a defendant cannot be tried for a substantive crime in the county where it occurred merely because that substantive crime could have served as a basis for a RICO charge in another county. Rather, we intend this discussion to be limited to a situation where one series of actions may give rise to several different criminal charges, or which might run afoul of the legislative prohibition against multiple punishments as codified in Section 11 of Title 21.

this kind of proceeding will serve the broad remedial purposes our Legislature intended by its passage of the Act, and will advance the policies underlying the Act. *See* 22 O.S. 1991, § 1419; *Tafflin v. Levitt,* 493 U.S. 455, 467, 110 S.Ct. 792, 799, 107 L.Ed.2d 887 (1990).

■ Concerning Appellant's complaint he was denied Due Process of law guaranteed by the Fourteenth Amendment to the United States Constitution, we simply note the United States Constitution "imposes constraints on the exercise of personal jurisdiction, but not on the location of permissible venues." *Clement v. Pehar,* 575 F.Supp. 436, 442 (N.D.Ga.1983). "When minimum contacts exist with the relevant sovereign, due process no longer protects a defendant from distant litigation because the location of permissible venues is a matter of sovereign prerogative." *Id.* (quoting *Federal Trade Commission v. Jim Walter Corp.,* 651 F.2d 251, 257 (5th Cir.1981)).

Accordingly, for the reasons given above, we **REVERSE** and **REMAND** Appellant's conviction for Grand Larceny in the House in the Night Time in CF–93–410, and order that charge **DISMISSED.**

#### D.

■ To eliminate confusion in future cases, we set forth the following procedure for determining when it is appropriate for a district court to try a defendant for a violation of the Oklahoma Corrupt Organizations Prevention Act and a substantive crime committed in another county which may serve both as a predicate crime for the Act and a substantive crime.

At the conclusion of the preliminary hearing (if one is held), the examining magistrate must, as dictated by statute, determine whether a violation of the Act has been committed and whether there is sufficient cause to believe the defendant has committed that crime. *See* 22 O.S.1991, § 264. If the magistrate determines the prosecution has not met its burden as to the violation of the Act, he or she must hold venue in that county is not appropriate for the trial of any substantive crimes committed in other counties which had as their nexus the Act. If, however, the magistrate rules the defendant must be held to answer for a violation of the Act, he or she must also determine and rule there exists a nexus, or common nucleus of operative facts, between the Act and the substantive crimes which occurred in another county. A determination must also be made at that time whether the three factors enunciated above warrant a single trial for all offenses. Only after such a determination has been made can the prosecution proceed with all crimes in a single venue. Of course, a defendant can elect to waive the magistrate's determination if he wishes to dispose of all such crimes in a single proceeding. The prosecution can appeal a ruling unfavorable to it in the same manner it appeals other unfavorable rulings by a magistrate. *See* 22 O.S.1991, §§ 1089.1–1089.7. A defendant can proceed in the same fashion as he does from any bindover order of a magistrate. *See* Sections 491–524 of Title 22.

#### III.

The charge of Robbery by Force and Fear in CF–93–417 which occurred in Oklahoma County is addressed in Appellant's second proposition. There Appellant claims his right to due process was violated when he was tried on an offense which was different from that on which he was bound over at preliminary hearing.

In CF–93–417, Appellant was charged with Robbery by Force and Fear in violation of 21 O.S.1991, § 791. The record shows at the conclusion of the preliminary hearing, the magistrate did not find probable cause to believe that crime was committed; however, in the bindover order, he did find sufficient evidence to support a trial on a charge of knowingly concealing stolen property. Despite this order, Appellant was tried on the original robbery charge.

The State concedes—and we agree—Appellant was improperly tried on the charge of robbery and that reversal is proper, but argues he can be retried in Cleveland County on the proper charge, citing *Thrasher v. State,* 734 P.2d 324 (Okl.Cr.1987) and *Beaird v. Ramey,* 456 P.2d 587 (Okl.Cr.1969).

■ We are not persuaded by the State's argument. Although venue in Cleveland County may have been appropriate so long as a valid racketeering charge was also before the court, there is no basis for venue in Cleveland County in the absence of that racketeering charge. When the jury acquitted Appellant of the racketeering charge, there was no longer a basis for venue in Cleveland County for reasons given in proposition one, above. Accordingly, Appellant's conviction in CF–93–417, Robbery by Force and Fear, must be reversed and remanded.[7]

### IV.

■ Only one other proposition warrants extended consideration. In his seventh proposition, Appellant contends his convictions for both second degree forgery and obtaining property by false pretenses violate the prohibitions against double jeopardy and double punishment and require that one of the convictions be reversed.

The evidence shows Appellant and a companion entered the Dillard's store at Sooner Fashion Mall, where Appellant picked up items of clothing, went to the register, presented Mr. Clark's credit card, signed Mr. Clark's name to the credit slip, and walked out with the merchandise. These actions served as the basis for both charges.

We agree reversal of one conviction is warranted, based on the principle of law that a defendant cannot be "punished twice for one criminal course of conduct where his offenses were incident to one objective." *Hale v. State*, 888 P.2d 1027, 1029 (Okl.Cr. 1995); *Id.* at 1031 (Lumpkin, J., concurring in result). Clearly, such is the case here. We order that the conviction in CF–93–416, Obtaining Merchandise by False Pretenses, be **REVERSED** and **REMANDED** with instructions to **DISMISS.**

### V.

Appellant also presents other propositions of error which we have reviewed and to which we find no merit. They are:

III. Mr. Carter was denied a fair trial because the district judge who issued the search warrant also presided over the trial, in violation of 22 O.S.1991, § 576;

IV. Evidence used against Mr. Carter at trial violated his Fourth Amendment rights against improper searches and seizures;

V. The trial court erred in allowing Officer Cook to testify before the jury regarding hearsay statements allegedly given by Mr. Clark and Mr. Hickman;

VI. Mr. Carter was denied his right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments;

VIII. The evidence was insufficient to sustain Mr. Carter's convictions.

Accordingly, Appellant's conviction for Second Degree Forgery in Case No. CF–93–412 is **AFFIRMED.** For the reasons given above, Appellant's convictions for Grand Larceny in the House in the Night Time in Case No. CF–93–410 and Obtaining Merchandise by False Pretenses in Case No. CF–93–416 are ordered **REVERSED** and **REMANDED** with instructions to **DISMISS.** Appellant's conviction for Robbery by Force and Fear in Case No. CF–93–417 is ordered **REVERSED** and **REMANDED** for a **NEW TRIAL** in Oklahoma County, should the prosecution desire to pursue the charge.

JACK LOUIS CARTER, Appellant, was tried by a jury in the District Court of Cleveland County and convicted of the following crimes in the following cases and received the following sentences: CF–93–410, Grand Larceny in the House in the Night Time (21 O.S.1991, § 1707) (five years); CF–93–412, Second Degree Forgery (21 O.S.

---

7. We find no basis for prohibiting the State from trying Appellant in an appropriate venue, here Oklahoma County. However, we remind the prosecution of a very basic fact: it must prove beyond a reasonable doubt that the crime occurred. Given that both of the prosecution's major witnesses are now dead (one was dead even before Appellant's trial in Cleveland County), it would appear the prosecution may elect not to pursue a retrial of this charge. However, because of the peculiar circumstances surrounding this case, we cannot preclude the prosecution from attempting to establish its case.

1991, § 1585(2)) (three years); CF–93–416, Obtaining Merchandise by False Pretenses (21 O.S.1991, § 1541.1) (six months); CF–93–417, Robbery by Force and Fear (21 O.S. 1991, § 791) (eight years). The trial court ordered all sentences to be served consecutively. AFFIRMED in part and REVERSED in part.

JOHNSON, P.J., CHAPEL, V.P.J., STRUBHAR, J., concur.

LANE, J., concurs in results.